E-FILED
Wednesday, 03 November, 2004 03:07:21 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,  ) | |
| ) | |
| Plaintiff,  ) | |
| ) | |
| v.  ) | No. 04-CR-20036 |
| ) | |
| SHAWN ADAMSON,  ) | |
| ) | |
| Defendant.  ) | |
| ) | |

**ORDER**

On June 16, 2004, Shawn Adamson was charged by indictment with possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1). On August 18, 2004, Adamson filed a Motion to Suppress Evidence (#12). Adamson argues that he was stopped and detained without consent or reasonable suspicion, and, as a result, a weapon found on his person which forms the basis of the pending charge should be suppressed. On September 3, 2004, the Government filed its Response to the Motion to Suppress (#13). This court held an evidentiary hearing on the motion October 4, 2004. Both Adamson and the Government have both filed supplemental briefs after the evidentiary hearing (#14 & #15).

FACTS

The first to testify at the hearing on the motion to suppress was Coles County Probation Officer Steve Kelly. On February 19, 2004, at approximately 9:00 p.m., Officer Kelly, along with other probation officers, went to Hannah's Inn in Mattoon, Illinois to conduct a home visit for a

probationer. During the visit, the probation officers found evidence of drugs in one of the rooms on the second floor and received information that several individuals had just left the room. Officer Kelly went outside to find these individuals and found four people walking together from the back exit of the motel in the motel parking lot. These individuals matched the description given by hotel staff of the individuals who had been in the room where the drugs were found. Officer Kelly recognized Adamson, who was carrying a bundle of clothing in his arms, and knew him to carry firearms. Officer Kelly asked them if they were residents of the motel. One of the individuals said "yes" but another said "no." Officer Kelly also observed that Adamson was acting unusual based upon Kelly's prior contacts with him. At approximately 9:30 p.m., Officer Kelly contacted the Mattoon Police Department and asked that an officer be sent to investigate the drugs found in the motel. Officer Kelly also asked the individuals to identify themselves, but two refused. Officer Kelly further asked the individuals to "stand by" until the police arrived due to the drug investigation, and they complied.

Officer Brad Gabel of the Mattoon Police Department later arrived, and Officer Kelly informed him that Adamson was acting nervous, clutching a bundle of clothes tightly, and was known to carry a gun. Around 9:45 p.m., Officers Jeremy Clark and Steve Newlin of the Mattoon Police Department arrived on the scene to assist. Officer Clark took Adamson to the front of a pickup truck in the parking lot. Adamson first put the bundle of clothing in the back of the truck. Officer Kelly patted down the bundle of clothing and felt the outline of a small automatic weapon. Officer Kelly informed Officer Newlin about the weapon and Newlin verified that he felt the outline of a weapon in the bundle. Officer Clark then searched the bundle of clothing.

Officer Gabel also testified for the Government. Officer Gabel noticed Adamson clutching

the bundle of clothing as if he was trying to conceal something. Gabel patted down and searched another of the four individuals, Darrell Ferrell, while Officer Clark patted down Adamson. Prior to conducting the pat down searches, Officer Clark informed Officer Gabel that on the previous day Adamson's ex-girlfriend, Shannon Davis, reported that Adamson had threatened her with a small chrome handgun. Gabel later heard Officer Newlin say he had felt a handgun in the bundle of clothing Adamson had been holding.

Officer Clark further testified for the Government, indicating that he asked Adamson if he would consent to a search, and Adamson said, "Whatever." Officer Clark instructed Adamson to put down the bundle of clothing in the bed of a pickup truck parked near where they were standing and put his hands on the truck. Officer Clark conducted a pat down search of Adamson, but found nothing. After Officers Kelly and Newlin said they felt the gun in the bundle of clothing, Officer Clark took the bundle to the trunk of one of the squad cars. Officer Clark unwrapped the bundle of clothing and found a .22 caliber semi-automatic pistol. The final witness for the Government was Auxiliary Officer Steve Newlin. Newlin confirmed that he heard Clark ask Adamson for consent to search and heard Adamson say, "Whatever."

The defense called Darrell Ferrell, who was one of the individuals with Adamson when the pat down was conducted. Ferrell testified that Adamson was with him most of the day on February 19, 2004, in a room on the first floor of Harrah's Inn. Ferrell testified that he and Adamson met probation officers Steve Kelly and Pam Ferris in the hall of the motel. According to Ferrell, Kelly asked at that time for consent to search them, but both Ferrell and Adamson refused. Later, when the Mattoon police officers arrived, the police asked for consent to search. According to Ferrell, Adamson refused to consent and was then handcuffed and searched. On cross-examination, Ferrell

indicated that he had been drinking for 7 or 8 hours before the incident on February 19, 2004. Ferrell also had prior drug convictions and pleaded guilty to aggravated battery after having a physical altercation with Officer Kelly in a courthouse.

Finally, the defense called Shelby Guyett. Guyett is a student at Mattoon High School. Guyett went to the motel room where Adamson and Ferrell were located on February 19, 2004. On cross-examination, Guyett indicated there was no evidence of drinking in the motel room, and she could not smell alcohol on either Ferrell or Adamson. Guyett was unclear as to how Adamson was searched and by whom, but indicated Adamson did not give consent to search. Based upon this evidence, Adamson seeks to suppress the gun seized and all statements made by Adamson after his arrest. For the following reasons, the motion to suppress is DENIED.

## ANALYSIS

Initially, the court points out that it carefully observed the manner and demeanor of all witnesses in this matter, and finds the testimony of Officers Kelly, Gabel, Clark, and Newlin more credible than that of Ferrell and Guyett. Throughout their respective testimony, the officers answered in a straightforward manner, and the testimony of each officer was consistent with the other. Furthermore, Ferrell testified to having consumed alcohol for several hours on the day of the incidents in question. In addition, Ferrell, who has had prior felony convictions, had a prior altercation with Officer Kelly resulting in a conviction for aggravated battery. Guyett testified that she did not observe any evidence of drinking in the motel room where Adamson and Ferrell were located in February 19, 2004, despite Ferrell's testimony that he had been drinking in the room for hours. This testimony causes the court to question Guyett's ability to observe and the credibility of her testimony.

The first issue on the motion to suppress is Officer Kelly's initial encounter with Adamson as a result of which Adamson remained in the motel parking lot until police arrived. This court finds the testimony of Officer Kelly credible and finds that Adamson consented to wait in the parking lot until police arrived. Even had such consent not been given, Officer Kelly had reasonable suspicion to stop Adamson. To make an investigatory stop, an officer needs only reasonable suspicion supported by articulable facts that criminal activity is afoot. United States v. Jackson, 300 F.3d 740, 745 (7th Cir. 2002). Reasonable suspicion is some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity. Jackson, 300 F.3d at 745. In making this determination, courts look to the totality of circumstances known to the officer at the time of the stop, including the experience of the law enforcement agent and the behavior and characteristics of the suspect. Jackson, 300 F.3d at 745-46. In addition, an officer's prior dealings with the particular individual or knowledge of a criminal record might also contribute to the basis for reasonable suspicion. Jackson, 300 F.3d at 746.

In the instant case, Officer Kelly had reasonable suspicion that Adamson was involved in drug activity. Officer Kelly observed drugs in the motel room, received information that people had just left the room, and observed Adamson with three other people in the parking lot matching the general description provided by motel staff of the people who had been in the motel room where the drugs were found. Officer Kelly also knew of Adamson's prior drug convictions. Furthermore, the individuals gave mixed responses when asked whether they were staying in the hotel. Therefore, Officer Kelly's stop of Adamson in the parking lot, even if not consensual, was not a violation of the Fourth Amendment.

The second issue on the motion to suppress is whether the officers had reasonable suspicion

to pat down Adamson's clothing. Again, this court finds the officers' testimony that Adamson consented to a pat down search credible and finds that Adamson did indeed give such consent. Even if there was no consent, the pat down was supported by reasonable suspicion. An officer may conduct a protective pat-down for weapons if a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. United States v. Ford, 333 F.3d 839, 843 (7th Cir. 2003). That is, a protective pat down search is appropriate only if the officer has at a minimum some articulable suspicion that the subject is concealing a weapon or poses a danger to the officer or others. Ford, 333 F.3d at 843. In making this objective determination, the court looks at the totality of circumstances known to the officer at the time. Ford, 333 F.3d at 843. Knowledge that a suspect has been armed in the past contributes to reasonable suspicion. Jackson, 300 F.3d at 746.

Here, the police were aware that drugs had been found in a motel room, several individuals had just left the room, and Adamson was immediately found in the parking lot. Adamson was clutching a bundle of clothes tightly and was acting nervously. Officers also had information that Adamson was seen by his girlfriend the night before with a gun. Based upon this information, the officers had reasonable suspicion to conduct a pat down search for weapons. In addition, this reasonable suspicion extended to the bundle of clothing which Adamson deposited in the back of the pick up truck. As the Government aptly states in its response, it would defy logic to suggest that the officers had reasonable suspicion to pat down the defendant for weapons, but could not pat down the bundle of clothing he was carrying before returning it to him. Furthermore, once officers felt the presence of a gun in Adamson's clothing, they had probable cause to search the clothing and seize the gun.

IT IS THEREFORE ORDERED:

(1) Defendant's Motion to Suppress (#12) is DENIED.

(2) This case remains set for a status conference by personal appearance on November 5, 2004, at 1:00 p.m.

ENTERED this 2nd day of November, 2004

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
U. S. DISTRICT JUDGE