UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
DANVILLE/URBANA DIVISION

UNITED STATES OF AMERICA, Plaintiff

v.

| | |
|---|---|
| SHAWN ADAMSON, Defendant<br>No.: 04-CR-20036-01 | PRESSE MATTHEWS, Defendant<br>No.: 04-CR-20028-01 |
| LEANN BENNETT, Defendant<br>No.: 03-CR-20102-01 | ERIC PERRY, Defendant<br>No.: 03-CR-20093-01 |
| PHILIP BIRDSONG, Defendant<br>No.: 03-CR-20070-01 | ANTONIAL RANDLE, Defendant<br>No.: 04-CR-20047 |
| DWAYNE CHISLOM, Defendant<br>No: 03-CR-20072-01 | PATRICK SPAIN, Defendant<br>No.: 04-CR-20010-01 |
| JESSE COURTNEY, Defendant<br>No.: 04-CR-20044-01 | THOMAS SUMMERS, Defendant<br>No.: 03-CR-20082-01 |
| PERRY HONORABLE, Defendant<br>No.: 04-CR-20029-01 | MELVIN TATE, Defendant<br>No.: 04-CR-20016-01 |
| KEITH BENNETT JOHNSON, Defendant<br>No.: 03-CR-20064-01 | JASON WARD, Defendant<br>No.: 04-CR-20041-01 |
| ANTHONY JORDAN, Defendant<br>No.: 04-CR-20008-01 | SEMAJI WARREN, Defendant<br>No.: 03-CR-20004-01 |
| DOUGLAS JORDAN, Defendant<br>No.: 04-CR-20012-01 | JOHN WYMAN, Defendant<br>No.: 04-CR-20014-01 |

**DEFENDANTS' MOTION POST-*BOOKER* TO FILE DEFENDANTS' 3553 FACTORS SEPARATELY UNDER SEAL &
DEFENDANTS' JOINT SUPPLEMENTALCOMMENTARY ON SENTENCING FACTORS**

NOW COMES the above-entitled Defendants, and the Chief Federal Public Defender for the Central District of Illinois, Richard H. Parsons, by and through TIFFANI D. JOHNSON, Assistant Federal Public Defender, and per this Court's instructions, files this consolidated

1

motion on behalf of the above-entitled clients, who have been affected by the recent Supreme Court Decision, *United States v. Booker* 125 S.Ct. 738, 748, ___ U.S. ___ (2005). Pursuant to Title 18 U.S.C. Section 3551, 3553, 3582, 3561 & 3661, and the recent Supreme Court decision in *Booker* the defendants jointly submit the following sentencing memorandum:

### I. Legal Sentencing Factors to Be Considered

1. Now that the United States Sentencing Guidelines are advisory, the Court has much more flexibility in weighing factors to impose sentences. This Court should look to Chapter 7 of the Guidelines, dealing with violations of probation and parole --- which have always been advisory --- for guidance on how to approach the now advisory sentencing guideline regime.

2. Chapter 7 of the Guidelines specifies the importance of *flexibility* in an advisory sentencing regime. Specifically, Chapter 7 first emphasizes the importance of flexibility in imposing sentences for violations, because, as it states: "The Commission views these policy statements [contained in Chapter 7] as evolutionary and will review relevant data and materials concerning revocation determinations under these policy statements. Revocation guidelines will be issued after federal judges, probation officers, practitioners, and others have the opportunity to evaluate and comment on these policy statements." U.S.S.G. Ch. 7, A-1 (Authority). It is clear that the Commission expected, under an advisory system, to have judges, probation officers, and attorneys for both the Government and defendants to help shape an "evolutionary" revocation regime. Thus, the Commission was comfortable in allowing flexibility in revocation decisions in the hopes that a pattern of practice could be discerned, over time, but that such a practice would require the participation of all involved.

3. Further, to make such considerations, Chapter 7 refers to differing theories of revocation. The first involved a "breach of trust" approach, which secondarily considered the nature of the

underlying offense. *Id.* at A-3(b). The second involved sanctions as though the revocation would be directed specifically at the violating conduct; as though the defendant was being punished for a new, specific crime. *Id*. The Commission stated that the first theory was preferable because, *inter alia,* "The potential unavailability of information and witnesses necessary for a determination of specific offense characteristics or other guideline adjustments could create questions about the accuracy of factual findings concerning the existence of those factors." *Id.* The Defendants submit that this quandary is analogous to the problems defendants and judges faced before *Booker*. Using a lower standard of proof, and relying on letters from the Government raises substantial questions about the accuracy of the enhancement imposed upon a defendant, and thus, the Courts should shy away from relying on a Presentence Investigative Report that is intended to be "fact heavy", and merely attempts to quantify the amount of drugs, or money involved in a transaction or offense, and should rather focus on the offense conduct actually admitted, and look to the totality of the circumstances surrounding his or her offense involved. In a Post-*Booker* regime, this process is precisely what is needed to give Congress the opportunity to respond, if at all, to the Supreme Court.

4.     That being said, 18 U.S.C. § 3553(a) *et seq.* should provide the most guidance --- when taken together with relevant information from the Probation Department --- to the Court in determining the sentence to be imposed upon a defendant. Individuals found guilty of an offense shall be sentenced, in accordance with the provisions of 18 U.S. C. 3553, to (1) a term of probation as authorized by subchapter B; (2) a fine as authorized by subchapter C; or (3) term of imprisonment as authorized by subchapter D.

5.     The court shall impose a sentence sufficient, **BUT NOT GREATER THAN NECESSARY**, to comply with the purposes set forth. 18 U.S.C. 3553(a)(1). This is the

overriding standard which must be applied now that the Supreme Court has excised 18 U.S.C. § 3553 (b) from the Sentencing Reform Act. *Booker*, 125 S.Ct. 738.

6.    The Breyer majority opinion states that the "district courts, while not bound to apply the Guidelines, must *consult* those Guidelines and take them into account when sentencing." *See* 18 USC §§ 3553(a)(4). *Booker* 125 S.Ct. 738, 767 (Breyer, J.) (emphasis added). Therefore, at minimum the district court has to consider the guideline calculations and ranges. Note, however, that 18 USC § 3553(a) lists the guidelines as the *last* among the factors to be considered. The *first* factor is "the nature and circumstances of the offense *and the history and characteristics of the defendant*." This Court, therefore, should determine the sentence *first*, then check its conclusions against what the guidelines recommend. The "holistic" sentence, that encompasses all factors (including prohibited factors), should necessarily be lower, because the guideline range does not include previously prohibited or discouraged factors.

7.    **No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence**. 18 U.S.C. § 3661. *See also Booker*, 125 S.Ct. 738, 767 (expressly endorsed by J. Breyer).

8.    A defendant who has been found guilty of an offense *may* be sentenced to a term of *probation* unless the offense is a Class A (life imprisonment) or Class B (25-years or more) felony and the defendant is an individual, or probation has been expressly precluded. 18 U.S.C. § 3561 (a). For a felony, the authorized term of probation is 1 - 5 years. 18 U.S.C. § 3561 (c).

9.    The court, in determining whether to impose a term of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in section 3553(a) to the extent that they are applicable, recognizing that imprisonment

is NOT *an appropriate means of promoting correction and rehabilitation*. 18 U.S.C. § 3582(a).

10. The court, in determining the particular sentence to be imposed, shall consider --- (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (3) the kinds of sentences available; and (4) the kinds of sentences and the sentencing range established by the Sentencing Guidelines; (5) Sentencing Commission policy statements; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. 3553(a).

11. The sentence imposed shall (A) reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with the needed educational or vocational training, medical care of other correctional treatment in the most effective manner. 18 U.S.C. 3553(a)(2).

12. Since the Sentencing Guidelines are now advisory, the departure provisions set forth in Section 5, Parts H and K, while providing a template for determining a reasonable sentence, no longer dictate to district judges how much weight, if any, they may give to mitigating or aggravating factors which may impact the sentence.

13. After the advisory guideline range is determined, traditional sentencing factors should be considered, including, *but not limited to*: (1) age, (2) education, (3) vocational skills, (4) mental and emotional conditions, (5) physical conditions, (6) drug, alcohol or gambling addictions, (7) employment record, (8) family ties and responsibilities; (9) role in the offense, (10) criminal history; (11) social-economic status; (12) military, civic, charitable, or public service; (13) lack of guidance as a youth; (14) aberrant behavior; and (15) cooperation. Although prior to *Booker*

the Sentencing Commission dictated the weight a judge could give to each of these factors, if any, it is now the district judge who determines how much weight to give each factor, and how the factors impact the ultimate reasonableness of the sentence to be imposed. The district judge is now free to consider the traditional factors used by judges for centuries and assign the appropriate weight thereto.

14. **"Sentencing will be harder now than it was a few months ago. District Courts cannot just add up the figures and pick a number within a narrow range**. Rather, they must consider all of the applicable factors, listen carefully to defense and government counsel, and sentence the person before them as an individual. *Booker* is not an invitation to do business as unusual." *United States v. Ranum*, No. 04-CR-31 (E.D/Wisc. Jan 19, 2005) (J. Adelman) ("In every case, courts must now consider all of the § 3553(a) factors, not just the guidelines. And where the guidelines conflict with the other factors set forth in § 3553(a), courts will have to resolve the conflicts.") (emphasis added).

15. Judge Adelman noted a different and clearly more flexible approach to sentencing after *Booker* than that which Judge Paul Cassell had espoused in his earlier decision in *United States v. Wilson, 2005* U.S. Dist. LEXIS 735 (D.Utah Jan 13, 2005). With his typical clarity, Judge Adelman explained:

> The directives of *Booker* and [18 U.S.C.] § 3553(a) make clear that courts may no longer uncritically apply the guidelines and, as one court suggested, 'only depart . . . in unusual cases for clearly identified and persuasive reasons.' *United States v. Wilson*, Case No. 2:03-CR-0082, 2005 WL 78552, at *1 (D. Utah Jan 13, 2005). The approach espoused in *Wilson* is inconsistent with the holdings of the merits majority in *Booker*, rejecting mandatory guideline sentences based on judicial fact-finding, and the remedial majority in *Booker*, directing courts to consider all of § 3353(a) factors, many of which the guidelines either reject or ignore. For example, under §3553(a)(1) a sentencing court must consider the 'history and characteristics of the defendant.' But under the guidelines, courts are generally forbidden to consider the defendant's age, U.S.S.G. § 5H1.1, his education and

vocational skills, § 5H1.2, his mental and emotional conditions, § 5H1.3, his physical condition including drug or alcohol dependence, §5H1.4, his employment record, § 5H1.5, his family ties and responsibilities, § 5H1.6, his socio-economic status, § 5H1.10, his civic and military contributions, § 5H1.11, and his lack of guidance as a youth, § 5H1.12. The guidelines' prohibition of considering these factors cannot be squared with the §3553(a)(1) that the court evaluate the 'history and characteristics' of the defendant. The only aspect of a defendant's history that the guidelines permit courts to consider is criminal history. Thus, in cases in which a defendant's history and character are positive, consideration of all of the § 3553(a) factors might call for a sentence outside of the guideline range.

16. In some cases, a defendant's educational, treatment or medical needs may be better served by a sentence which permits the offender to remain in the community pursuant to 18 U.S.C. § 3553(a)(2)(D). **Therefore the sentencing court must also evaluate the need to provide the defendants with education, training, treatment or medical care in the most effective manner**. 18 U.S.C. § 3553(a)(2)(D), which might conflict with the guidelines, which in most cases offer only prison. See U.S.S.G. § 5C1.1 (describing limited circumstances in which court can impose sentence other than imprisonment).

17. While one can't fault the *Wilson* Opinion's general premise that Congress has clearly indicated that is primary concern is deterrence, incapacitation and promotion of respect for the law, that doesn't logically lead to its unsupportable conclusion that Congress and a centralized Sentencing Commission are much better equipped than district judges to decide what constitutes "just punishment." There is certainly a superficial appeal to the *Wilson* Opinion's observation that "the court is poorly suited to consider elasticities and other factors that would go into a sensible deterrence calculation," or its continuing observation that, "[o]n the other hand, the Sentencing Commission with its ability to collect sentencing data, monitor crime rates, and conduct statistical analyses, is perfectly situated to evaluate deterrence arguments." *Wilson*, slip op. at 17. But the issue isn't that simple.

18. Hearings and studies, of course, are the best method by which to assess whether certain types of sentences will produce *general* deterrence with respect to millions of possible perpetrators. But an assessment of the specific-deterrent value of a particular sentence to a *particular* defendant can be made only with the benefit of knowing that defendant's individual characteristics and circumstances. Thus, to be accurate, the *Wilson* opinion should also have observed that while the Sentencing Commission may be "perfectly situated" to evaluate general deterrence issues, it was "poorly suited" to consider specific deterrence -- and that district courts are, in fact, "perfectly suited" to make this type of individual assessment. By collapsing these two fundamental objectives of punishment, the *Wilson* opinion simply endorses the twenty-year-old--now discredited-- assumption underlying mandatory guidelines; that individual characteristics don't have any place in sentencing decisions.

19. The *Wilson* opinion is equally weak when it comes to conclusions about the relative weight to be given to various objectives articulated in § 3553. Again, Congress has certainly indicated its belief that general deterrence and incapacitation are very important goals. Yet, independent Article III judges are part of a co-equal branch of government and have been given the responsibility -- by common law and by virtue of 18 U.S.C. §§ 3553(a), 3661 and 3582 -- of achieving individual justice by considering the individuals before them. Accordingly, they simply cannot abdicate that responsibility, as the court in *Wilson* appeared to conclude they should, simply because a nationwide legislative body had indicated its desire that courts give law enforcement objectives serious consideration. The *Wilson* opinion provides no justification for so heavily weighting law-enforcement objections over individualized factors. Indeed, any such deference would conflict with the lifetime tenure the Framers provided district judges, which was intended to encourage them to use their independent judgement in the face of determined

political pressure.

20.     The *Wilson* opinion goes on to state that because the Guideline are the only nationwide standard available, it should be used in all but the most exceptional cases.  However, by choosing the narrowest adjective, "exceptional" -- and fashioning a strict standard that the *Booker* remedial majority never even suggested -- the *Wilson* Court incorrectly concludes that district judges must abdicate the duties of an independent judiciary to incorporate individual factors and simply defer to the debatable "sense" of Congress that individual factors are less important than general ones.  Such a dramatic shift in responsibility cannot be based on the bald and unsupported reasoning employed in *Wilson*.

21.     In *United States v. Meyers*, 2005 WL 165314 (S.D. Iowa Jan 26, 2005), Judge Pratt notes the distinct views of *Booker* reflected in Judge Adelman's Ranum opinion and Judge Cassell's Wilson ruling and states:

> This Court adopts Judge Adelman's view. To treat the Guidelines as presumptive is to concede the converse, i.e., that any sentence imposed outside the Guideline range would be presumptively unreasonable in the absence of clearly identified reasons. If presumptive, the Guidelines would continue to overshadow the other factors listed in section 3553(a), causing an imbalance in the application of the statute to a particular defendant by making the Guidelines, in effect, still mandatory.

22.     After a long quote from the *Ranum* opinion noting how the requirements of § 3553(a) can conflict with aspects of the guidelines, Judge Pratt in *Myers* highlights:

> In citing *Ranum*, this Court does not mean to be unduly harsh about the wisdom contained in the Guidelines, for wisdom is there. Wisdom, however, also resides in the other statutory sentencing factors, but was not allowed expression under the former mandatory scheme. Each of the factors enumerated under § 3553(a) is, in reality, an expression of our society's multiple interests in sentencing an individual.

Calling *Booker* an "an invitation, not to unmoored decision making, but to the type of careful

analysis of the evidence that *should* be considered when depriving a person of his or her liberty," Judge Pratt proceed thoughtfully reviewed the purpose of the factors in § 3553(a) in the context of a minor gun possession case. And, after finding that an "aberrant behavior" departure under guideline § 5K2.20 was sought by the defendant and not contested by the government, Judge Pratt concluded by explaining why the factors of § 3553(a) make a "term of imprisonment in this case is completely unwarranted," and why he imposed a sentence of probation "to deter others from committing similar acts."

## II. Specific 3553 Factors for Consideration in this Case

23.     Considering the personal nature of the § 3553 factors, defense counsel requests permission to file under seal a document specifically addressing the § 3553 factors that he considers to be applicable to his individual case pursuant to *Booker*.

## III. Burden of Proof for PSR Objections

24.     Post-*Blakely* precedent is reversed only on the Sixth Amendment question of whether enhancements must be decided by a jury, not on the requirement that enhancements must be found beyond a reasonable doubt, which is a Fifth Amendment Due Process argument. The ruling in *United States v. Booker* 125 S.Ct. 738, 748, ___ U.S. ___ (2005) is strictly about the Sixth Amendment, and does not address the Fifth Amendment question of what standard should be applied to support enhancements made pursuant to the Sentencing Guidelines. Just because a the district judge is now allowed to rule upon advisory enhancements, does not mean that the district judge should continue to use the preponderance of the evidence standard to make this ruling.

25.      In determining guideline enhancements, this Court should utilize the reasonable doubt standard which derives from the Fifth Amendment. *See In re Winship*, 397 U.S. 358, 364 (1970)

This Court should recognize that the sentencing statutes do not actually set a standard of proof for sentencing enhancements. The preponderance of the evidence standard that has been heretofore utilized derives from Chapter 6 of the guidelines. The question of whether this provision withstands Constitutional muster was not addressed by the *Booker* Court, and given the closeness of the *Booker* decision on jury rights, the reasonable doubt standard must prevail.

26.  In support of this argument, one only needs to consult recent Supreme Court precedent. The rationale of *Summerlin v. Schriro* that retroactivity did not apply because judicial determinations beyond a reasonable doubt were sufficiently reliable supports the use of a reasonable doubt standard. *Schriro v. Summerlin*, 124 S.Ct. 2519, ___ U.S. ___ (2004).

27.  Also supporting a reasonable doubt standard is Justice Thomas's footnote 6 in his dissent to Justice Breyer's opinion in *Booker*, in which he quotes Chapter 6 regarding the Commission's belief that the preponderance standard applies, then says "The Court's holding today corrects this mistaken belief." *Booker*, 125 S.Ct. at 798.

28.  The serious remaining constitutional question regarding reasonable doubt opens a statutory construction argument that subsumes the actual constitutional question. On the same day that *Booker* was decided, the Court issued its opinion in *Clark v. Martinez*, 125 S.Ct. 716, ___ U.S. ___ (2005), (when deciding which of two plausible statutory constructions to adopt, a court must consider the necessary consequences of its choice. If one of them would raise a multitude of constitutional problems, the other should prevail--whether or not those constitutional problems pertain to the particular litigant before the Court).

29.  The federal sentencing statutes, therefore, should be construed to avoid the difficult constitutional question of whether harsher sentencing -- whether presumptive or required except in extraordinary circumstances -- violates the Fifth Amendment right to due process when the

greater punishment is based on less than an admission or proof beyond a reasonable doubt.

30.     This is just what the Seventh Circuit did in to save the federal drug statute. *United States v. Brough*, 243 F.3d 1078 (7th Cir. 2001) (the Court noted that every reasonable construction must be resorted to in order to try to save a statute, and ruled that its was fairly possible to construe §841 to require proof beyond a reasonable doubt to save the statute from unconstitutionality under *Apprendi*). While defense counsel continues to maintain that the Seventh Circuit violated the tenants of Judicial Review by conducting such an analysis, the fact remains that the Seventh Circuit has adopted this approach, and therefore said approach should be followed by the District Court until the Supreme Court has ruled on the appropriateness of this new a modified form of Judicial Review, often referred to as "statutory conversion."

31.     Even without Justice Thomas's note on the effect of the first part of *Booker* on Chapter 6, the statutory conversion argument would require the guidelines and commentary to fall under *Stinson v. United States*, 113 S.Ct 1913, ___ U.S. ___ (1993) (commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution, a federal statute, or is inconsistent with or a plainly erroneous reading of that guideline).

32.     Thus this Court, the Defendants respectfully submit, should construe the burden of proof as beyond a reasonable doubt to avoid violating the defendant's Constitutional right to due process.

### IV.  Statement of Reasons for Imposing Sentence

33.     If this Court imposes a sentence exceeding 24-months, the defendants hereby request that this Court continue to comply with 18 U.S.C. § 3553(c) by stating in open court, during sentencing, its reasons for imposing the sentence, including its reasons for applying or denying application of (1) requested 18 U.S.C. § 3553(a) factors (2) traditional sentencing factors; and

(3) non-traditional but applicable sentencing factors. See 18 U.S.C. § 3553(c).

34.     Additionally, the defendants request a clear statement of what burden of proof was used in determining sentencing factors.

        Respectfully Submitted,

        JOINT DEFENDANTS

        RICHARD H. PARSONS
        Federal Public Defender

            s/Tiffani D. Johnson
BY:_____
        TIFFANI D. JOHNSON, Bar No. 6278909
        Assistant Federal Defender
        300 West Main Street
        Urbana, Illinois 61802
        Phone: (217) 373-0666
        Fax: (217) 373-0667
        Email: tiffani_johnson@fd.org

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
DANVILLE/URBANA DIVISION

UNITED STATES OF AMERICA, Plaintiff

v.

| | |
|---|---|
| SHAWN ADAMSON, Defendant<br>No.: 04-CR-20036-01 | PRESSE MATTHEWS, Defendant<br>No.: 04-CR-20028 |
| LEANN BENNETT, Defendant<br>No.: 03-CR-20102-01 | ERIC PERRY, Defendant<br>No.: 03-CR-20093 |
| PHILIP BIRDSONG, Defendant<br>No.: 03-CR-20070-01 | ANTONIAL RANDLE, Defendant<br>No.: 04-CR-20047 |
| DWAYNE CHISLOM, Defendant<br>No: 03-CR-20072-01 | PATRICK SPAIN, Defendant<br>No.: 04-CR-20010 |
| JESSE COURTNEY, Defendant<br>No.: 04-CR-20044-01 | THOMAS SUMMERS, Defendant<br>No.: 03-CR-20082 |
| PERRY HONORABLE, Defendant<br>No.: 04-CR-20029-01 | MELVIN TATE, Defendant<br>No.: 04-CR-20016 |
| KEITH BENNETT JOHNSON, Defendant<br>No.: 03-CR-20064 | JASON WARD, Defendant<br>No.: 04-CR-20041 |
| ANTHONY JORDAN, Defendant<br>No.: 04-CR-20008 | SEMAJI WARREN, Defendant<br>No.: 03-CR-20004 |
| DOUGLAS JORDAN, Defendant<br>No.: 04-CR-20012 | JOHN WYMAN, Defendant<br>No.: 04-CR-20014 |

**<u>PROPOSED ORDER</u>**

The above-entitled Defendants, are hereby allowed to file their confidential §3553

Sentencing Factors under seal.

_____
Judge Michael P. McCuskey

**CERTIFICATE OF SERVICE**

I hereby certify that on February 10, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to Assistant United States Attorneys Timothy A. Bass, Colin S. Bruce, Richard N. Cox, Hilary W. Frooman, David H. Hoff and Eugene L. Miller.

                                                s/Tiffani D. Johnson
                                                _____
                                                TIFFANI D. JOHNSON, Bar No. 6278909
                                                Assistant Federal Defender
                                                300 West Main Street
                                                Urbana, Illinois 61802
                                                Phone: (217) 373-0666
                                                Fax: (217) 373-067
                                                Email: tiffani_johnson@fd.org

I:\Johnson\CLIENTS\booker.wpd